**Affirmed and Majority and Concurring and Dissenting Opinions filed April 30, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00132-CV

---

## K.R. THIAGARAJAN, APPELLANT

## V.

## SHARMA TADEPALLI, APPELLEE

---

**On Appeal from 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 64983**

---

## NO. 14-13-00133-CV

---

## SHARMA TADEPALLI, APPELLANT

## V.

## THE SRI MEENAKSHI TEMPLE SOCIETY, APPELLEE

**M A J O R I T Y   O P I N I O N**

These consolidated appeals arise from litigation involving leaders of The Sri Meenakshi Temple Society ("MTS"), a non-profit corporation that owns and operates a temple in Pearland, Texas. MTS's purposes include building and maintaining "a Temple complex in the Houston, Texas and surrounding metropolitan area with Goddess Sri Meenakshi as the main Deity in accordance with the Hindu Religion."

The trial court signed an order dismissing the underlying case in its entirety for lack of subject matter jurisdiction after determining that "the ecclesiastical exemption applies to all claims and parties . . . ."

In Cause No. 14-13-132-CV, appellant K.R. Thiagarajan challenges the trial court's dismissal of his defamation claim against Sharma Tadepalli. In Cause No. 14-13-133-CV, appellant Tadepalli challenges the trial court's dismissal of his third-party claim against MTS seeking indemnification for liability and attorney's fees under the charter, bylaws, and written policies of MTS in connection with his defense of Thiagarajan's defamation claim.

We affirm the trial court's dismissal order.

## FACTS

Thiagarajan worshipped at the temple and served as a member of MTS's board of directors. Acting in this capacity, Thiagarajan oversaw operation of the temple's library; its contents included a selection of DVDs available for purchase or rental. Tadepalli also worshipped at the temple and served as the secretary of

2

MTS's board of directors.

On November 23, 2010, Tadepalli sent an email with the subject line "Re: X-Rated and non-religious D*V*D*s*". The email was sent to at least a dozen recipients; it appears below in its entirety and without correction of typographical or grammatical errors.

Dear Fellow Devotees,

I am writing this note as Life member of MTS and not as a secretary.

I am appalled that we continue to sell dvd's in our temple that have nothing to do with Hindu religion. Some of the Indian movies are not rated properly nor content labels of ratings are reflected accurately and consistently. I am opposed to selling movie dvd's in our temple.

I brought up the issue many times in the board – it is all about indirect revenue and bringing people to temple hoping they will fill our donation boxes. I have proposed an outlandish idea to get the point across "Why not hire a barber and we can get more traffic and why stop at DVD's". There is a vested interest of keeping the dvd's. Ask for scientific basis – correlation between dvd purchase and people visiting temple and donating, 'No answer'. The discussion suddenly changes to vegetables. Use some excuse or the other to continue the dvd club in a public space subsidized by MTS devotees. Are there any rules "distance between churches or schools and x-rated dvd rental places". Why should not they apply for MTS.

There are two people who are behind keeping these DVD's tradition going in MTS – "KR Thiagarajan" and "Ram Reddy" and perhaps some more who don't want to be vocal.

KRT is on record in GB meetings saying that there are three people who bitterly complained about dvd's 1) Dr. Sharma Tadepalli; 2) Dr. Nalinakshi; 3) Sri Nagan Srinivas. So why worry about three people; versus two veterans. I had several people complained including Hema Chandrasekar. Let us start a signature campaign against selling and renting non-religious dvd's in MTS campus. There are more than three people who are opposed to this x-rated movies.

We can do the following:

Short term solution –

3

1) Buy all the dvd's out from MTS and recycle them electronically. I have bought dvd's for this purpose and doing this over a year. We need more people to do this. Purge the bad dvd's and all dvd's at some point of time that have no connection to Hindu religion.

2) Please sign up in the library committee and stop purchase of new DVD's every month

Long term Solution –

1) Bring a resolution into GB and stop selling non-religious dvd's of all kinds

2) Scrutinize the expenditure of all library purchases over years and stop the practice of various vendors dumping their unwanted dvd's in the name of discounts. We don't know what we are buying (Telugu person like Ram Reddy does not [know] what Tamil movies he is buying; KRT does not know what telugu movies they are buying in the name of library). They don't watch all these dirty movies (at least not all) and they want devotees to find out and let them know so they can remove them from shelves. Why the ratings are all messed up. This is not acceptable. Let us question how much revenue is generated and how much is the expenditure? Is this movie club run for the pleasure of couple of veterans who enjoy movies, a few devotees and staff who watch these movies at the expense of temple getting a bad name and bad image. What about our children saying it was borrowed from temple so it should be OK?

Let us collectively put a stop to non-religious rental or selling dvd's. No traditional temples or any temple for that matter in entire north america has a dvd parlour within the temple. Why should we?

Sharma Tadepalli
A MTS Devotee and Life member of MTS

Additional emails followed.

In a second email sent two days later to more than three dozen recipients, Tadepalli stated: "Whoever bought these DVD's for the temple library have the full responsibility to go through the DVD's and CD's and trash them. Knowingly or unknowingly these board members responsible for library, made the decision to

buy these dirty movies." A third email from Tadepalli sent on November 28 to dozens of recipients stated: "Walk into the library and evidence is all over the place – sexually explicit materials decorated all over the place." This third email continues: "Why did the directors in-charge of library buy all these dirty movies?" It concludes: "Devotees – please forward the evidence to your friends who are MTS devotees as some board members live in denial."[1]

Tadepalli's November 2010 emails about the library's contents provoked considerable discussion, controversy, and email traffic among MTS's leaders and members. On December 19, 2010, Tadepalli sent an email to the MTS board of directors with the subject line "Our Temple Issue – Regrets." The December 19 email stated as follows:

> Dear MTS Board of Directors,
>
> I understand that my e-mails regarding our temple DVD issue have caused anxiety and resentment in many of you.
>
> As the MTS Secretary, I felt it was my responsibility to address the devotee complaints and I tried to address them through proper channels. Unfortunately, my emotions got better of me and I vented my personal feelings through channels outside the board and I realize it was a mis-judgment on my part.
>
> As a Secretary whose commitment is first to the institution, I feel remorse for airing my personal feelings on this issue. I sincerely and deeply regret if I have offended anyone through my e-mails (on this subject), it was entirely unintentional.
>
> I am willing to sit down and listen to each of you on any of the issues including DVD so we can deal with them collectively within the democratic framework of our great temple.

---

[1] Thiagarajan's appellate brief includes an appendix with exhibits purporting to contain the full text of Tadepalli's November 23, November 25, and November 28 emails, along with additional materials. Thiagarajan's brief provides no indication that the exhibits attached to it are contained in the official clerk's record filed in this court. Therefore, we do not rely on or consider materials contained in the appendix to Thiagarajan's brief; instead, we quote and rely upon only those emails, portions of emails, and materials contained in the clerk's record.

In the best interest of our temple, I would like all of us to move forward.

Best Regards,
Sharma Tadepalli
Secretary, Board of Directors
Sri Meenakshi Temple Society
Pearland, TX 77584-4630

The controversy sparked by Tadepalli's emails continued for months. In June 2011, MTS's board of directors passed resolutions addressing the controversy; among other things, these resolutions reprimanded Tadepalli for sending the November 2010 emails.

On September 19, 2011, Thiagarajan filed an original petition asserting a defamation claim against Tadepalli based on the content of (1) his initial November 23, 2010 email; and (2) the additional emails sent on November 25 and November 28, 2010. Thiagarajan also requested injunctive relief to enforce the MTS board's June 2011 resolutions by "mandating that [Tadepalli] . . . send an apology and retraction email, in language approved by [Thiagarajan] . . . , to those people to whom he sent the original emails retracting and correcting the statements made. This apology and retraction will also be published in the Temple Times as well as to the full MTS database."

Tadepalli filed an answer on November 18, 2011, in which he asserted a general denial. Tadepalli filed a third-party claim against MTS on December 8, 2011, and an amended third-party claim against MTS on April 23, 2012. As amended, Tadepalli's third-party claim sought indemnification from MTS "for any and all sums he may be compelled to pay [Thiagarajan] . . . as a result of the occurrence made the basis of [Thiagarajan's] . . . lawsuit."

Tadepalli's amended third-party claim asserted that "the alleged defamatory statements, to the extent that they were made, were not defamatory and, in all

6

events, concerned matters related to the conduct and governance of the MTS and to other ecclesiastical matters. Therefore, as an officer of the MTS, he is entitled to indemnification under the charter, bylaws or written policies of the MTS, including, but not limited to, all of his costs and expenses related to his defense of Plaintiff's claims." Tadepalli further asserted that he was entitled to indemnification because he "was acting as an agent or vice-principal of the MTS and his actions were within the scope of his authority as an agent or vice-principal and were done in furtherance of the business . . . of the MTS."[2]

MTS filed a general denial in response to Tadepalli's third-party claim; it also asserted that Tadepalli's third-party claim is foreclosed by the failure of a condition precedent, and by a lack of subject matter jurisdiction.

MTS filed a separate pleading styled as a "Plea to the Jurisdiction and Motion to Dismiss" in which it asserted that Tadepalli's third-party indemnity claim is foreclosed because the trial court lacks subject matter jurisdiction over ecclesiastical questions. Tadepalli filed a response and his own motion to dismiss, in which he asserted that the trial court had subject matter jurisdiction to address his indemnification claim against MTS. Tadepalli simultaneously moved to dismiss Thiagarajan's defamation claim against him for lack of subject matter jurisdiction because it "involves controversies over religious doctrine."

The trial court initially denied MTS's plea to the jurisdiction in an order signed on March 16, 2012. MTS filed a "Supplemental Plea to the Jurisdiction, Motion to Dismiss, and Motion for Reconsideration" on May 3, 2012, in which it

---

[2] Tadepalli also asserted a defamation claim against MTS member V.K. Dorai and a retaliatory discharge claim against MTS. The trial court's dismissal order encompassed these claims as well. Tadepalli does not challenge dismissal of these claims; therefore, we do not address them.

again asserted that the trial court lacked subject matter jurisdiction over Tadepalli's third-party indemnification claim against MTS because "this entire controversy is an ecclesiastical matter for which the civil courts have no jurisdiction." MTS also filed a "Second Supplemental Plea to the Jurisdiction, Motion to Dismiss, and Motion for Reconsideration" on May 8, 2012.

The trial court signed an "Order Dismissing Case for Lack of Jurisdiction" on November 9, 2012. It states, "After considering the entire record, the Court agrees with the Third-Party Defendant that the ecclesiastical exemption applies to the claims against it." The order also states: "Further, the Court has determined that the ecclesiastical exemption applies to all claims and parties in this case." Based on these determinations, the trial court ordered that "this case, and all claims and all parties, are DISMISSED with prejudice for lack of jurisdiction due to the ecclesiastical exemption."

Thiagarajan and Tadepalli both filed motions for new trial in response to the trial court's November 2012 dismissal order. Thiagarajan asserted that the trial court had subject matter jurisdiction to consider his defamation claim against Tadepalli, while Tadepalli asserted that the trial court had subject matter jurisdiction to consider his third-party indemnification claim against MTS. The motions for new trial were overruled by operation of law. Thiagarajan and Tadepalli both filed timely notices of appeal.

## ANALYSIS

I. **Standards Governing the Ecclesiastical Exemption to Subject Matter Jurisdiction**

Resolution of this appeal turns on the existence or absence of subject matter jurisdiction. We review this determination *de novo*. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d

8

217, 226 (Tex. 2004).

The Free Exercise clause of the First Amendment to the United States Constitution precludes civil courts from delving into matters focused on "'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of a church to the standard of morals required of them.'" *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713-14 (1976) (quoting *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 733 (1872)). "The First Amendment is applicable to the states through the Fourteenth Amendment." *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 601 (Tex. 2013) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)).

Determining the reach of subject matter jurisdiction in disputes involving religious organizations requires consideration of competing demands. "Courts do not have jurisdiction to decide questions of an ecclesiastical or inherently religious nature, so as to those questions they must defer to decisions of appropriate ecclesiastical decision makers." *Masterson*, 422 S.W.3d at 605-06. "But Texas courts are bound to exercise jurisdiction vested in them by the Texas Constitution and cannot delegate their judicial prerogative where jurisdiction exists." *Id*. at 606.

In short, courts must act but cannot intrude. *See id.* (Courts must "fulfill their constitutional obligation to exercise jurisdiction where it exists, yet refrain from exercising jurisdiction were it does not exist."); *see also id.* at 596 (Texas courts have a "constitutional duty to decide disputes within their jurisdiction while still respecting limitations the First Amendment places on that jurisdiction.").

As the Texas Supreme Court has recognized, the line between required judicial action and forbidden judicial intrusion "will not always be distinct" because many disputes "require courts to analyze church documents and organizational structures to some degree." *Id*. at 606. "[C]ourts must look to the

substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata." *Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citing *Green v. United Pentecostal Church Int'l*, 899 S.W.2d 28, 30 (Tex. App.—Austin 1995, writ denied)); *see also Williams v. Gleason,* 26 S.W.3d 54, 59 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("Whether this suit is ecclesiastical, or concerns property rights, torts, or criminal conduct, is determined by first examining the substance and effect of the [plaintiffs'] petition – without considering what they use as claims – to determine its ecclesiastical implication.").

If subject matter jurisdiction exists, then courts must exercise that jurisdiction. "Properly exercising jurisdiction requires courts to apply neutral principles of law to non-ecclesiastical issues involving religious entities in the same manner as they apply those principles to other entities and issues." *Masterson*, 422 S.W.3d at 606. "Thus, courts are to apply neutral principles of law to issues such as land titles, trusts, and corporate formation, governance, and dissolution, even when religious entities are involved." *Id.*

## II.    Applying the Standards

### A.    Thiagarajan's Defamation Claim Against Tadepalli

According to Thiagarajan, the ecclesiastical exemption does not foreclose his defamation suit arising from Tadepalli's November 2010 emails because "Tadepalli's statements were not in the course of a Board meeting or even during a religious function or spoken by a temple priest." Thiagarajan argues that Tadepalli "made blatantly false accusations that Thiagarajan purchased and enjoyed XXX videos in a public forum and disseminated those lies to others outside of the Board."

Thiagarajan relies heavily on the first sentence of Tadepalli's November 23 email, in which Tadepalli says he is "writing this note as Life member of MTS and not as a secretary." Based on this statement, Thiagarajan contends that "Tadepalli has stepped outside the confines of the temple at this point as he makes his attacks on an individual level. In doing so, he can no longer cloak his statements in the guise of temple discussion."

We reject Thiagarajan's contentions because the allegedly defamatory statements at issue must be viewed in the larger context of the disputed emails and their content. *See, e.g., Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 729 Tex. App.—Houston [14th Dist.] 2013, pet. denied) (Inquiry into defamatory meaning "does not examine individual words in isolation . . . . Context is important.") (citations omitted); *see also New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154-55 (Tex. 2004); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114-15 (Tex. 2000).

The context here encompasses larger religious issues and considerations that permeate Tadepalli's November 2010 emails. These issues relate to Tadepalli's concerns regarding the morality and propriety of making secular materials available in the temple library; the perceived sexual content of secular materials, which Tadepalli characterized as "dirty movies," being made available in the temple library; the alleged failure to rate temple library materials appropriately based on their sexual content; and the asserted failure of the library's overseers to conform their actions to religious requirements when making sexually oriented secular materials available in the temple library.

Regardless of whether Tadepalli spoke individually or in his capacity as MTS's secretary when he sent the November 2010 emails, allowing Thiagarajan's defamation claim to proceed unavoidably would lead a civil court into the

11

forbidden territory of litigating "'conformity of the members of a church to the standard of morals required of them.'" *Milivojevich*, 426 U.S. at 713-14 (quoting *Watson*, 80 U.S. (13 Wall.) at 733). Subject matter jurisdiction is foreclosed when defamation claims are bound up with ecclesiastical implications such as those present in this case. *See Williams*, 26 S.W.3d at 59-60; *Tran*, 934 S.W.2d at 743-44.

In light of these circumstances, the trial court properly concluded that civil court jurisdiction is foreclosed with respect to Thiagarajan's defamation claim against Tadepalli predicated on the November 2010 emails.[3]

### B.      Tadepalli's Indemnification Claim Against MTS

Tadepalli contends that the ecclesiastical exemption does not apply to his third-party claim against MTS even though this exemption forecloses the underlying defamation claim that prompted his request for indemnification.

Tadepalli's live pleading alleged that "as an officer of the MTS, [Tadepalli] . . . is entitled to indemnification under the charter, bylaws or written policies of the MTS . . . ." Tadepalli's appellate brief asserts that "the basis of the dispute in the original case is a disagreement between factions of the MTS as to whether certain practices at the MTS complied with the doctrines of their faith . . . ." He nonetheless contends that "the trial court can safely avoid these considerations in addressing the [discrete] . . . issue of indemnity . . . ."

---

[3] Thiagarajan also argues that dismissal of his defamation claim was improper because only MTS sought dismissal of Tadepalli's third-party indemnity claim based on the ecclesiastical exception. This contention fails for two reasons. First, Tadepalli invoked the ecclesiastical exemption in seeking dismissal of Thiagarajan's claims. Second, this court is obligated to address the existence of subject matter jurisdiction *sua sponte* regardless of whether the parties challenged it. *See, e.g., In re G.S.G.*, 145 S.W.3d 351, 353 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)).

We reject Tadepalli's effort to divorce his indemnity claim from the underlying ecclesiastical dispute in light of the manner in which Tadepalli has framed the bases for his indemnification claim.

The circumstances here involve permissive rather than mandatory indemnification. The only written indemnification provision identified by the parties under the charter, bylaws or written policies of MTS appears in Article XI of MTS's Articles of Incorporation. Article XI's first sentence states that "[t]he Corporation may indemnify a person who was, is, or is threatened to be made a named defendant or respondent in litigation or other proceedings because the person is or was a director . . . as provided by the provision in the Act governing indemnification." *See also* Tex. Bus. Orgs. Code Ann. § 8.101(a) (Vernon 2012). Among other things, the statute governing permissive indemnification requires a determination that the person seeking indemnification "acted in good faith." *Id*. § 8.101(a)(1)(A). Article XI's second and concluding sentence states: "As provided in the By-laws, the Board of Directors shall have the power to define the requirements and limitations for the Corporation to indemnify directors, officers, or others related to the Corporation." Tadepalli does not contend on appeal that mandatory indemnification applies here. *See* Tex. Bus. Orgs. Code Ann. § 8.051 (Vernon 2012).

As noted earlier, we must look to "the substance and effect" of Tadepalli's complaint to "determine its ecclesiastical implication" in this case. *Tran*, 934 S.W.2d at 743; *see also Williams,* 26 S.W.3d at 59. Tadepalli's First Amended Third Party Petition asserts that he is entitled to indemnification because "the alleged defamatory statements . . . concerned matters related to the conduct and governance of the MTS and to other ecclesiastical matters." Having pleaded that MTS should indemnify him precisely because the statements at issue "concerned

13

matters related to the conduct and governance of MTS and to other ecclesiastical matters," Tadepalli cannot plausibly contend that a determination as to whether MTS should indemnify him nonetheless will avoid determination of "ecclesiastical matters."

Tadepalli also pleaded that he is entitled to indemnification "because, at the time the alleged defamatory statements were made, Dr. Tadepalli was acting as an agent or vice-principal of the MTS and his actions were within the scope of his authority as an agent or vice-principal and were done in furtherance of the business . . . of the MTS." Tadepalli cites *American Alloy Steel v. Armco, Inc.*, 777 S.W.2d 173, 175 (Tex. App.—Houston [14th Dist.] 1989, no writ), and *Mercedes-Benz of North America, Inc. v. Dickenson*, 720 S.W.2d 844, 857-58 (Tex. App.—Fort Worth 1986, no writ), in support of his assertion that "an agent is entitled to indemnity when its liability arises from conduct performed for the benefit and under the direction of the principal as a good faith execution of the agency relationship." He contends on appeal that determining whether he wrote his November 2010 emails "as a good faith execution of the agency relationship" can be answered without delving into ecclesiastical issues.

We disagree in light of the First Amended Third Party Petition's allegations and Tadepalli's contentions on appeal. Tadepalli contends he was acting in good faith on behalf of MTS when he sent emails that, according to his live pleading, "concerned matters related to the conduct and governance of the MTS and to other ecclesiastical matters."[4] As framed in Tadepalli's live pleading and in his

---

[4] The dissent narrowly frames the indemnification inquiry as focusing only on whether Tadepalli's acts were undertaken as an officer of MTS, and whether he was sued because of his officer status. That is a truncated version of Tadepalli's claim to indemnification. The complete version is this: Tadepalli contends he is entitled to indemnification because (1) he was acting as an officer of MTS when he sent the emails; (2) he was sued because of these actions undertaken as an officer; and (3) these actions were undertaken in the good faith execution of his

14

arguments on appeal, his asserted good faith in sending emails is inextricably intertwined with the ecclesiastical nature of the emails at issue. Merits consideration of whether Tadepalli did indeed send the emails in good faith unavoidably will lead to consideration of the ecclesiastical matters upon which those emails focused.

Based on this record, the trial court properly concluded that civil court jurisdiction is foreclosed with respect to Tadepalli's third-party indemnification claim against MTS.

CONCLUSION

We affirm the trial court's November 9, 2012 order dismissing all parties and claims based on the lack of subject matter jurisdiction.

/s/    William J. Boyce
           Justice

Panel consists of Chief Justice Frost and Justices Boyce and Jamison. (Frost, C.J., concurring and dissenting).

---

responsibilities as an officer. Additionally, the dissent misplaces its reliance on *Lacy v. Bassett*, 132 S.W.3d 119 (Tex. App.—Houston [14th Dist.] 2004, no pet.). *Lacy* is distinguishable because it did not address an indemnification dispute; instead, it addressed a church member's request for access to church financial records as mandated by statute. *See* Tex. Bus. Orgs. Code Ann. § 3.153 (Vernon 2012). As this court noted, "[W]e are not being called upon to interpret any Church constitution, by-laws, or other governing documents." *Lacy*, 132 S.W.3d at 125.