**Opinion issued July 31, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00872-CV

———————————

**JAMALL ANDERSON, Appellant**

**V.**

**LARRY TRUELOVE AND BRADY ROBLES, Appellees**

———————————

### On Appeal from the 189th District Court
### Harris County, Texas
### Trial Court Cause No. 2013-55836

———————————

## O P I N I O N

This is an interlocutory appeal from the trial court's denial of appellant Jamall Anderson's application for a temporary injunction to enjoin appellees Larry Truelove and Brady Robles from removing Anderson as the minister at West End

Church of Christ.  We hold that the trial court is without jurisdiction to resolve the controversy and, accordingly, we dismiss the case for want of subject-matter jurisdiction.

## Background

West End Church of Christ, which has approximately 16 members, was incorporated as a Texas non-profit corporation in 2010.  On Tuesday, September 10, 2013,[1] Anderson, who was then the minister of the church, telephoned most of the church members to call a meeting for that evening.  Approximately 10 people attended the meeting, at which Anderson confessed that he had taken money from the church to pay expenses for his sick mother.  Anderson asked whether the attendees wanted to retain him as minister, and according to one of the attendees, Paul Dorian Williams, eight members at the meeting agreed to forgive him and retain him.

Another member who was present, Carl Lilly, disagreed.  Lilly objected that members had not received proper notice of the meeting, and also objected to Anderson continuing as minister.  Ultimately, Anderson decided that a second meeting should be held the next evening, because four members had been unable to attend the Tuesday meeting.

---

[1]  The parties agree that this meeting was held on Tuesday, September 10, 2013, but they sometimes mistakenly describe it as the September 11 meeting.

2

At the Wednesday night meeting, Anderson distributed copies of the checks that he acknowledged he wrote against the church's account to pay his mother's expenses. According to Anderson, the attendees at the Wednesday night meeting also agreed that he should be retained as minister.

Anderson believed that any issues related to his misappropriation of money had been resolved during these two meetings. But on Saturday, September 14, 2013, Anderson arrived at the church to prepare for his Sunday morning lesson and was handed a letter stating that the church was terminating him for embezzling church funds. The letter was signed by appellees Larry Truelove and Brady Robles. Truelove and Robles were identified as two of the three members of the church's board of directors in the church's 2010 certificate of formation filed with the Texas Secretary of State.

On September 19, 2013, Anderson sued Truelove and Robles. Anderson alleged that Truelove and Robles had changed the church's locks and unlawfully excluded him. Anderson requested temporary and permanent injunctions restraining them from interfering with his duties as minister of West End Church. Anderson contended that neither Truelove nor Robles had the power to fire him because (1) Robles had stepped down, and Truelove had been removed, from the board of directors, and (2) the church's bylaws did not confer upon the directors

authority to terminate the minister. Anderson's petition asserted a single cause of action—a request for a declaratory judgment that his termination was void and that he and two other church members, not Truelove or Robles, constituted the board of directors. Anderson obtained an ex parte temporary restraining order prohibiting Truelove and Robles from excluding Anderson from church premises or interfering with his ministerial work.

The next day, Truelove and Robles moved to dissolve the temporary restraining order, citing the ecclesiastical abstention doctrine as the basis for their contention that the trial court lacked subject-matter jurisdiction over the dispute. The parties entered into an agreed order dissolving the temporary restraining order and dictating limits on each side's behavior pending the hearing on the application for a temporary injunction.

On September 27, 2013, the trial court held a hearing on Anderson's application for a temporary injunction. Anderson presented four witnesses: himself, Robles, Dr. James Maxwell, who had worked with Anderson to revise the church's bylaws in 2013, and Williams, a church member who attended the meeting on September 10. Anderson introduced two exhibits: the church's 2010 certificate of formation and a copy of a seven-year plan that he had developed for the church. The thrust of Anderson's argument at the hearing was two-fold: (1) the

4

church members had already voted to retain him, and that vote should not be disturbed, and (2) the bylaws did not permit Truelove and Robles to terminate him.

At the hearing, Maxwell testified that the revised bylaws, which had been adopted by the church in May 2013, did not expressly authorize the board of directors to remove a minister. Maxwell testified that each Church of Christ is autonomous and "makes its own decisions for its own work without the jurisdiction of another body" and agreed that "whether . . . Anderson stays or goes is something for the church members to decide."

Robles agreed that he "ceased to be a director in 2011" and that bylaws "were enacted that replaced [him] as a director," but he also testified that he was a director when he signed the letter terminating Anderson. He did not explain how or when he purportedly became a director for a second time. He said that he signed Anderson's termination letter because members of the church asked him to, but that there was no meeting or vote by the congregation to terminate Anderson.

Much of the testimony at the hearing focused on the two meetings that Anderson called. Williams, who attended the first meeting, was asked whether the members were given three days' notice of the meeting, as purportedly required by the bylaws. He testified that he was notified of the meeting on the same day that it was held. In response to similar questions regarding whether he gave proper notice

5

of the two meetings, Anderson asserted that the bylaws gave him "leeway to call special meetings without a prior notice." He acknowledged, however, that the bylaws required seven days' notice of a special meeting of members.

At the conclusion of the hearing, the trial court determined that the two meetings called by Anderson did not comply with the church bylaws' notice requirement, and that a special meeting complying with the bylaws' notice requirement should be held. On October 7, 2013, the trial court entered an order (1) denying Anderson's request for a temporary injunction and (2) appointing a special master to conduct a properly-noticed special meeting during which the church membership would vote on whether to retain Anderson.[2] Anderson appealed.

## Discussion

We address our subject-matter jurisdiction because both sides argue that the ecclesiastical abstention doctrine limits the trial court's authority to adjudicate the case. Truelove and Robles argue that the trial court lacked subject-matter jurisdiction to adjudicate any issue in the case. They urge us to dismiss the case. For his part, Anderson contends that the trial court (1) lacked subject-matter jurisdiction to determine the propriety of the two meetings that he called and to

---

[2]    According to Truelove and Robles, a properly-noticed vote was held on October 28, 2013, and all 15 members present voted to terminate Anderson.

order a properly-noticed meeting and vote, but (2) had jurisdiction to grant his request for a temporary injunction and erred in failing to do so.

## A. Subject-Matter Jurisdiction and Standard of Review

"Subject matter jurisdiction cannot be waived or conferred by agreement" and "can be raised at any time," including in an interlocutory appeal. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012). We review the existence of subject-matter jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Our standard for reviewing subject-matter jurisdiction requires the pleader to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Dallas Cnty. Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 469 (Tex. App.—Dallas 1994, writ denied) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993)). When reviewing subject-matter jurisdiction, we must construe the petition in favor of the pleader, and if necessary, review the entire record to determine if any evidence supports jurisdiction. *See id.* (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446).

## B. Ecclesiastical Abstention Doctrine

"The Free Exercise clause of the First Amendment to the United States Constitution precludes civil courts from delving into matters focused on

'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of a church to the standard of morals required of them.'" *Thiagarajan v. Tadepalli*, Nos. 14-13-00132-CV & 14-13-00133-CV, 2014 WL 1711224, at *5 (Tex. App.—Houston [14th Dist.] Apr. 30, 2014, no pet. h.) (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713–14, 96 S. Ct. 2372, 2382 (1976)). "The First Amendment is applicable to the states through the Fourteenth Amendment." *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 601 (Tex. 2013) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S. Ct. 900, 903 (1940)).

"Determining the reach of subject matter jurisdiction in disputes involving religious organizations requires consideration of competing demands." *Thiagarajan*, 2014 WL 1711224, at *5. "Courts do not have jurisdiction to decide questions of an ecclesiastical or inherently religious nature, so as to those questions they must defer to decisions of appropriate ecclesiastical decision makers." *Masterson*, 422 S.W.3d at 605–06. "But Texas courts are bound to exercise jurisdiction vested in them by the Texas Constitution and cannot delegate their judicial prerogative where jurisdiction exists." *Id.* at 606 (courts must "fulfill their constitutional obligation to exercise jurisdiction where it exists, yet refrain from exercising jurisdiction where it does not exist."); *see also id.* at 596 (Texas courts

8

have a "constitutional duty to decide disputes within their jurisdiction while still respecting limitations the First Amendment places on that jurisdiction.").

"Properly exercising jurisdiction requires courts to apply neutral principles of law to non-ecclesiastical issues involving religious entities in the same manner as they apply those principles to other entities and issues." *Masterson*, 422 S.W.3d at 606. "Thus, courts are to apply neutral principles of law to issues such as land titles, trusts, and corporate formation, governance, and dissolution, even when religious entities are involved." *Id.* "[T]he line between required judicial action and forbidden judicial intrusion 'will not always be distinct' because many disputes 'require courts to analyze church documents and organizational structures to some degree.'" *Thiagarajan*, 2014 WL 1711224, at *5 (quoting *Masterson*, 422 S.W.3d at 606). "[C]ourts must look to the substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata." *Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citing *Green v. United Pentecostal Church Int'l*, 899 S.W.2d 28, 30 (Tex. App.—Austin 1995, writ denied)); *see also Williams v. Gleason*, 26 S.W.3d 54, 59 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("Whether this suit is ecclesiastical, or concerns property rights, torts, or criminal conduct, is determined by first

9

examining the substance and effect of the [plaintiffs'] petition—without considering what they use as claims—to determine its ecclesiastical implication.").

**B. Analysis**

Both sides agree that the ecclesiastical abstention doctrine limits the trial court's authority to adjudicate this case, but they disagree about the extent to which that is true. Truelove and Robles contend the entire case should be dismissed because the trial court lacked jurisdiction to make any of the rulings it did. They argue that neutral principles may be applied only to disputes over church property, and not to employment decisions regarding ministers. Anderson, by contrast, argues that the trial court had jurisdiction to enter the injunction he sought, but lacked jurisdiction to declare that the two meetings Anderson called were improper (and the votes taken at them invalid) due to lack of proper notice. Anderson argues that the trial court has jurisdiction to grant his requested injunction and declaratory relief because the trial court can simply review the bylaws and apply neutral

10

principles of law to determine that they do not authorize the board of directors to terminate him.[3]

Truelove and Robles rely upon *Dean v. Alford*, 994 S.W.2d 392 (Tex. App.—Fort Worth 1999, no pet.), to support their argument that the trial court lacks subject-matter jurisdiction. There, the Fort Worth Court of Appeals concluded that the trial court lacked subject-matter jurisdiction to resolve a controversy between two factions in a church regarding their pastor's termination, because "a pastor's ouster is ecclesiastical in nature." *Dean*, 994 S.W.2d at 395. The congregation initially voted to retain its pastor, but later voted to remove him. *Id.* at 394. The trial court ordered a new vote that complied with the bylaws. *Id.* On appeal, the Fort Worth court held that the case must be dismissed and that the trial court's order was void, because "[c]ourts may not attempt to right wrongs related to the hiring, firing, discipline, or administration of clergy." *Id.* at 395. Because "[t]he minister is the primary agent by which a church seeks to fulfill its

---

[3] Anderson attached a copy of the bylaws to his petition, but did not introduce a copy into evidence at the temporary injunction hearing. Truelove and Robles argue that we may not consider the bylaws to determine whether subject-matter jurisdiction exists, because Anderson failed to introduce them into evidence. We reject this contention, and consider the bylaws in analyzing whether jurisdiction exists. *See Dallas Cnty. Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 469 (Tex. App.—Dallas 1994, writ denied) (in determining the threshold issue of subject-matter jurisdiction, we may review the entire record to determine if any evidence supports jurisdiction) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)).

11

purpose . . . . [m]atters concerning this relationship must be recognized as of prime ecclesiastical concern." *Id.* "While such wrongs may exist and be severe, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities which may result from its liberal application." *Id.* (citing *Tran*, 934 S.W.2d at 743); *see also Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 132 S. Ct. 694, 706 (2012) (ecclesiastical abstention doctrine prevents civil courts from "[r]equiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so" because this "intrudes upon more than a mere employment decision").

*Dean* was decided almost 15 years before *Masterson v. Diocese of Northwest Texas*, 422 S.W.3d 594 (Tex. 2013). In *Masterson*, the Texas Supreme Court held that whether a church's vote to disassociate from the diocese complied with the church's bylaws was reviewable using neutral principles of law to determine whether the church or the diocese owned the church building. *See id.* at 607–10. *Masterson* reaffirmed that courts should defer to "religious entities' decisions on ecclesiastical and church polity questions," but held that "courts are to apply neutral principles of law to issues such as land titles, trusts, and corporate formation, governance, and dissolution, even when religious entities are involved."

*Masterson*, 422 S.W.3d at 596, 606. After *Masterson*, it is unclear whether the propriety of the termination of a minister, which older cases seemed to suggest was a categorically unreviewable ecclesiastical question, may now be reviewed applying neutral principles of law in cases in which the question turns on the substance of a document to which neutral principles of law may be applied, such as an incorporated church's bylaws. *See id.*

Here, the church's bylaws provide that the members of the board of directors have "general oversight and authority to direct, guide, and carry on the business operations of the church and the work of the members." By contrast, the minister has responsibility "for setting the church in order, in the absence of elders."

The bylaws contain provisions regarding the notice required for special meetings of members and directors, requiring that seven days' notice be given at a regular worship service of the congregation or printed in the bulletin for special meetings of members, and three days' notice be given personally or by telephone for special meetings of the directors. The bylaws do not specify what may be accomplished at either type of special meeting.

The bylaws contain a provision regarding removal of a director, providing that a director may be removed at any time for justifiable cause, which shall be specified in the advance notice of the meeting, by at least two-thirds of the

13

members present at any annual or specially-called meeting.  No provision in the bylaws governs the basis for or manner in which a minister may be terminated.

At the temporary injunction hearing, Maxwell testified that the bylaws did not "specifically" authorize directors to remove the minister.  Maxwell agreed that "whether . . . Anderson stays or goes is something for the church members to decide," but the bylaws say nothing about removal of a minister, by members or otherwise.

Having considered the entire record, we conclude that we need not resolve the question of *Masterson's* reach, because although Anderson contends that his claims regarding his termination may be resolved by applying neutral principles to the bylaws, the bylaws contain no provisions regarding termination of a minister. Thus, we cannot merely construe the bylaws under neutral principles of law to resolve the parties' dispute.  *Cf. Windwood Presbyterian Church, Inc. v. Presbyterian Church (U.S.A.)*, No. 01-10-00861-CV, 2014 WL 47750, at \*7–8 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, no pet.) (in declaratory judgment action regarding ownership of church campus, trial court could apply neutral principles to documents of title to resolve dispute); *see also Westbrook v. Penley*, 231 S.W.3d 389, 399 (Tex. 2007) (even if neutral principles approach applied, free exercise concerns would be implicated because court would have to make

14

determination about propriety of church discipline).  Accordingly, we hold the trial court lacked subject-matter jurisdiction over this dispute under the ecclesiastical abstention doctrine.  *Cf. Masterson*, 422 S.W.3d at 608 (dispute could be resolved by application of neutral principles of law, where bylaws expressly governed the question presented); *see also Hosanna-Tabor*, 132 S. Ct. at 706; *Dean*, 994 S.W.2d at 395.

Because we conclude that the trial court lacked subject-matter jurisdiction over this case, we do not reach Anderson's issues regarding the merits of the trial court's denial of his application for a temporary injunction.

## Conclusion

We vacate the trial court's October 7, 2013 order and render judgment dismissing the case for want of subject-matter jurisdiction.


Rebeca Huddle
Justice


Panel consists of Justices Keyes, Sharp, and Huddle.

15