**Opinion issued May 24, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-15-00088-CV

————————————

**ROLAND MOUTON, JR. AND DELORIAN MORGAN JONES, Appellants**

**V.**

**CHRISTIAN FAITH MISSIONARY BAPTIST CHURCH, CLARENCE ANDREWS, MARVIN NIXON, WALTER ERVIN, COREY WILSON, MARVIN RAUSAW, PRESTON COOK, AND CHRISTOPHER DOUGLAS, Appellees**

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-73452**

---

**OPINION**

Appellants Roland Mouton, Jr. and Delorian Morgan Jones sued Christian

Faith Missionary Baptist Church, its pastor, Corey Wilson, and other church

members, including Clarence Andrews, Marvin Nixon, Walter Ervin, Marvin

Rausaw, Preston Cook, and Christopher Douglas, after appellants were expelled from church membership and Wilson was elected as the church's pastor. Appellants sought various declarations and money damages related to appellants' expulsion and the church's purported failures to follow its bylaws regarding pastoral selection. The trial court granted the appellees' plea to the jurisdiction based upon the ecclesiastical abstention doctrine and dismissed appellants' claims for lack of subject-matter jurisdiction. Because the trial court was without jurisdiction to resolve the controversy, we affirm the trial court's judgment.

## Background

### *The church's incorporation*

Christian Faith Missionary Baptist Church was incorporated as a Texas non-profit corporation on June 12, 1969. The articles of incorporation provide that "[t]he management of the affairs of the Corporation shall be vested in the Official Board without the authority of a majority of the membership present and voting at any business meeting." On April 1, 1999, the church adopted its presently-effective constitution and bylaws.

### *Pastoral dispute and expulsion of members*

In January 2012, Roland Mouton, Sr., the church's pastor and appellant Mouton's father, died. The parties' dispute centers around the church's efforts to fill the pastoral vacancy. With respect to a vacancy, the church's bylaws provided:

2

In the event of a vacancy, a pulpit committee composed of Deacons and members (five (5) people on the committee) shall be appointed by the church to seek out a suitable Pastor and their recommendations will constitute a nomination though any member has the privilege of naming other nominations according to the policy established by the church.  The committee shall bring to the consideration of the church on [sic] only one (1) minister at a time.  Elections shall be by secret ballot; an affirmative vote of three-fourth (3/4) of those present being necessary for a choice.  The Chairman of Deacons and Trustees shall have the right to meet with the Pulpit Committee at any time.

(emphasis added.)

Jones, who then served as the church clerk and secretary, convened a meeting to elect a pulpit committee on February 8, 2012.  The pulpit committee was comprised of Jones and other individuals and eventually selected Mouton as their nominee for pastor.  However, other members of the church, including Preston Cook, who was Chairman of the Deacons, and Marvin Rausaw, who was Chairman of the Trustees, opposed the actions of the pulpit committee on the grounds that its members were engaging in "negative behavior not befitting the name of Christian and action not becoming of respectable church members."  In September 2012, Cook and Rausaw filed an application on behalf of the church for a temporary and permanent injunction to restrain Jones and "the alleged pulpit committee from causing an illegal vote to appoint a Pastor, which is not in the will of the members."  That action was non-suited on October 8, 2012.

On October 13, 2012, a meeting was held at which the deacons, trustees, and congregation voted to adopt a "resolution to restore order in the church."  The

resolution, signed by Cook and Rausaw, found that Jones, Mouton, and others involved with the pulpit committee "have engaged in a campaign of intimidation, threats, assault, falsehoods, and manipulation." The resolution expelled from church membership Jones, Mouton, and the others involved with the pulpit committee on the grounds that they "have hurt the Church, decreased its membership, distracted from its Christian mission, and continue to cause damage to the Church." Corey Wilson was elected and installed as the church's new pastor a month later, on November 17, 2012.

*Conflicting claims to the church's bank accounts*

On December 13, 2012, Whitney Bank, at which the church held two bank accounts, filed a petition for interpleader, alleging that Mouton, Jones, and a third person, David E. Daniels, had gone to a branch office on November 2, 2012, and again on November 13, 2012, and attempted to have the current signatories on the church's accounts removed and themselves added. According to the petition, Mouton, Jones, and Daniels presented a letter signed by Jones representing that she was the church's secretary and advising the bank that Mouton had been elected pastor of the church. The petition further alleged that after these events, Wilson and another man, Ervin, who was a current signatory on the church's accounts, notified the bank that Mouton and Jones were not authorized by the church to have access to the accounts and were attempting to defraud the church because Mouton

4

believed that the church's funds were part of his inheritance from his deceased father. The bank's petition named appellants and appellees as defendants. The bank was granted a non-suit after depositing the funds in the court's registry.

### *The suit between the parties*

Appellees answered and cross-claimed against Mouton, Jones, and Daniels for fraud and negligent misrepresentation related to their attempt to gain control of the church's bank accounts. Mouton and Jones counterclaimed for a declaration that Mouton was the pastor of the church and for damages in the amount of the interpleaded funds. They later amended their petition to add requests for declarations that the pulpit committee was properly constituted under the church's bylaws and that the appellees violated the church's bylaws by:

- Interfering with the pulpit committee;

- Holding unauthorized meetings;

- Hiring attorneys to file a defective Certificate of Amendment with the Secretary of State and to sue for an injunction;[1]

- Expelling appellants from membership and changing the locks so that appellants could not access the church; and

- Selecting Wilson as pastor.

---

[1] Jones's affidavit in support of the response to the combined motion for summary judgment and plea to the jurisdiction averred that on September 2, 2012, Preston Cook and attorney Bobbie Young "filed a Certificate of Amendment with the secretary of state's office changing the officers of the Church. Such a filing in the past had only been made with the approval of the Pastor in Charge. Former Deacon Walter Ervin was named both Treasurer and Secretary."

Appellees filed a plea to the jurisdiction in August 2013 and a motion to dismiss appellants' claims for lack of standing in October 2013. The trial court denied both. Appellees petitioned for a writ of mandamus challenging the denial of the motion to dismiss for lack of standing, which this court denied without specifying its reasons. *See In re Christian Faith Missionary Baptist Church*, No. 01-14-00057-CV, 2014 WL 2538646, at \*1 (Tex. App.—Houston [1st Dist.] June 5, 2014, orig. proceeding).

In October 2014, appellees filed a combined motion for summary judgment and plea to the jurisdiction. In the plea, appellees argued that the trial court lacked jurisdiction over appellants' claims under the ecclesiastical abstention doctrine because adjudicating the claims would require the trial court to review the church's discipline of appellants and to impermissibly involve itself in the pastoral selection process. After a hearing, the trial court granted the plea and dismissed appellants' claims for lack of subject-matter jurisdiction. Appellees non-suited their claims and appellants appealed.

## Plea to the Jurisdiction

In their first two issues, appellants argue that the trial court improperly concluded that the ecclesiastical abstention doctrine applied and thus erred in granting the church's plea to the jurisdiction.

**A.     Standard of Review**

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear a case.  *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Kamel v. Univ. of Tex. Health Sci. Ctr.*, 333 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).  The existence of subject-matter jurisdiction is a question of law that we review de novo.  *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002); *Kamel*, 333 S.W.3d at 681.

When a plea to the jurisdiction "challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action."  *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009) (internal quotation omitted) (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004)).  The plea to the jurisdiction standard mirrors that of a traditional motion for summary judgment.  *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 744 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  When reviewing the evidence, we must take as true all evidence in favor of the nonmovant and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor."  *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d at 228).  If the evidence creates a fact question

7

regarding jurisdiction, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder; however, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 227–28; *Kamel*, 333 S.W.3d at 681.

## B.  Ecclesiastical Abstention Doctrine

"The Free Exercise clause of the First Amendment to the United States Constitution precludes civil courts from delving into matters focused on 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of a church to the standard of morals required of them.'" *Thiagarajan v. Tadepalli*, 430 S.W.3d 589, 594 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713–14, 96 S. Ct. 2372, 2382 (1976)). "The First Amendment is applicable to the states through the Fourteenth Amendment." *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 601 (Tex. 2013) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S. Ct. 900, 903 (1940)).

"Determining the reach of subject matter jurisdiction in disputes involving religious organizations requires consideration of competing demands." *Thiagarajan*, 430 S.W.3d at 594. "Courts do not have jurisdiction to decide questions of an ecclesiastical or inherently religious nature, so as to those questions

8

they must defer to decisions of appropriate ecclesiastical decision makers." *Masterson*, 422 S.W.3d at 605–06. "But Texas courts are bound to exercise jurisdiction vested in them by the Texas Constitution and cannot delegate their judicial prerogative where jurisdiction exists." *Id.* at 606 (courts must "fulfill their constitutional obligation to exercise jurisdiction where it exists, yet refrain from exercising jurisdiction where it does not exist"); *see also id.* at 596 (Texas courts have a "constitutional duty to decide disputes within their jurisdiction while still respecting limitations the First Amendment places on that jurisdiction").

"Properly exercising jurisdiction requires courts to apply neutral principles of law to non-ecclesiastical issues involving religious entities in the same manner as they apply those principles to other entities and issues." *Masterson*, 422 S.W.3d at 606. "Thus, courts are to apply neutral principles of law to issues such as land titles, trusts, and corporate formation, governance, and dissolution, even when religious entities are involved." *Id.* "[T]he line between required judicial action and forbidden judicial intrusion 'will not always be distinct' because many disputes 'require courts to analyze church documents and organizational structures to some degree.'" *Thiagarajan*, 430 S.W.3d at 595 (quoting *Masterson*, 422 S.W.3d at 606). "[C]ourts must look to the substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata." *Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex. App.—Houston [1st Dist.] 1996, no writ)

(citing *Green v. United Pentecostal Church Int'l*, 899 S.W.2d 28, 30 (Tex. App.—Austin 1995, writ denied)); *see also Williams v. Gleason*, 26 S.W.3d 54, 59 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("Whether this suit is ecclesiastical, or concerns property rights, torts, or criminal conduct, is determined by first examining the substance and effect of the [plaintiffs'] petition—without considering what they use as claims—to determine its ecclesiastical implication.").

## C. Analysis

Appellants contend that their claims arise solely from the church's failure to abide by non-ecclesiastical terms of the church's bylaws and, therefore, the trial court had jurisdiction to adjudicate the case under neutral principles of law. According to appellants, the questions they raise—including whether appellees complied with church bylaws in electing Wilson as pastor and whether appellees properly expelled appellants from church membership—are non-ecclesiastical because they are governed by non-ecclesiastical provisions in the church's corporate documents. We conclude that the trial court correctly granted the plea to the jurisdiction because appellants' claims are inextricably intertwined with inherently ecclesiastical issues.

We find *Westbrook v. Penley*, 231 S.W.3d 389 (Tex. 2007), to be particularly instructive. In that case, Penley sued Westbrook, her former pastor and a licensed professional counselor, arguing that Westbrook improperly

10

disclosed Penley's confession of an extramarital affair in connection with the church's discipline of Penley. *Id.* at 391. Penley alleged that the confession was elicited during counseling and argued that the trial court could apply neutral principles to resolve her professional-negligence claim because Westbrook's duty of confidentiality was secular in nature. *Id.* at 399. The Texas Supreme Court reasoned that even though Westbrook's duty of confidentiality was secular in nature, the allegedly improper disclosure could not "be isolated from the church-disciplinary process in which it occurred, nor can Westbrook's free-exercise challenge be answered without examining what effect the imposition of damages would have on the inherently religious function of church discipline." *Id.* at 400. The Court thus concluded that the ecclesiastical abstention doctrine applied because, although Westbrook's professional duty was secular in nature, it was inextricably intertwined with inherently ecclesiastical matters. *See id.*

Contrary to appellants' argument, we conclude that *Masterson* did not alter the principle for which *Westbrook* stands: courts may apply neutral principles of law in cases involving religious entities only if doing so does not implicate inherently ecclesiastical concerns. *See Masterson*, 422 S.W.3d at 608. In other words, *Masterson* did not alter the long-recognized principle that civil courts must not interfere with the free exercise of religion by adjudicating claims that are intertwined with inherently ecclesiastical issues. *See, e.g.*, *Thiagarajan*, 430

11

S.W.3d at 594. Accordingly, contrary to appellants' contention, the mere fact that a church's corporate documents—here, its bylaws—prescribe a pastoral selection process does not make cases involving a pastoral selection dispute categorically reviewable by a civil court. Instead, whether neutral principles may be applied to a claim turns on the substance of the issues it raises. Consequently, the fact that the church's bylaws in this case contain provisions governing the process for pastoral selection does not compel the conclusion that a dispute over that process is reviewable under *Masterson*.

Here, as in *Westbrook*, appellants' claims are inextricably intertwined with the selection of the church's new pastor (Wilson) and the church's expulsion of members (appellants)—two issues long recognized to be inherently ecclesiastical and of prime importance to the exercise of religious liberty. Texas courts have long recognized that courts "should not involve themselves in matters relating to the hiring, firing, discipline, or administration of clergy." *Lacy v. Bassett*, 132 S.W.3d 119, 123 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (first citing *McClure v. Salvation Army*, 460 F.2d 553, 558 (5th Cir. 1972); then citing *Dean v. Alford*, 994 S.W.2d 392, 395 (Tex. App.—Fort Worth 1999, no pet.)); *see Thiagarajan*, 430 S.W.3d at 594 (Free Exercise clause of the First Amendment precludes civil courts from delving into matters of ecclesiastical government) (quoting *Milivojevich*, 426 U.S. at 713–14, 96 S. Ct. at 2382). This is because

"[t]he relationships between an organized church and its ministers is its lifeblood" and "[t]he minister is the primary agent by which a church seeks to fulfill its purpose." *Dean*, 994 S.W.2d at 395 (citing *Tran*, 934 S.W.2d at 743). Thus, "[c]ourts may not attempt to right wrongs related to the hiring, firing, discipline, or administration of clergy," because "[w]hile such wrongs may exist and be severe, and although the administration of the church may be inadequate to provide a remedy, the preservation of the free exercise of religion is deemed so important a principle it overshadows the inequities which may result from its liberal application." *See id.* Accordingly, "[m]atters concerning this relationship must be recognized as of prime ecclesiastical concern." *Id.*

Likewise, discipline of church members, including expulsion, is an "inherently religious function with which civil courts should not generally interfere." *Westbrook*, 231 S.W.3d at 399; *see Thiagarajan*, 430 S.W.3d at 594 (Free Exercise clause of the First Amendment precludes civil courts from delving into matters of ecclesiastical government and church discipline) (quoting *Milivojevich*, 426 U.S. at 713–14, 96 S. Ct. at 2382). "A church has a right to control its membership without government interference, including interference by the courts." *Retta v. Mekonen*, 338 S.W.3d 72, 76 (Tex. App.—Dallas 2011, no pet.) (church's failure to follow bylaws on a matter of internal governance is a matter of internal governance and ecclesiastical concerns, and courts may not

13

interfere with that decision). Thus, "[c]ourts have no jurisdiction to revise or question ordinary acts of church discipline and cannot decide who ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly cut off from the body of the church." *Westbrook*, 231 S.W.3d at 399 (internal quotations omitted) (quoting *Watson v. Jones*, 80 U.S. 679, 727 (1871)). We do not read *Masterson* to alter these bedrock principles.

Appellants rely on *Chen v. Tseng*, No. 01-02-01005-CV, 2004 WL 35989 (Tex. App.—Houston [1st Dist.], Jan. 8, 2004, no pet.) (mem. op.), to argue that their claims relate only to non-religious issues and therefore may be adjudicated by the trial court. They characterize the case as a narrow dispute about selection of a corporate officer and compliance with bylaws. But comparing appellants' claims to those in *Chen* highlights important differences. The issue in dispute in *Chen* was whether a church's election of members to its board of directors had been properly noticed. *Id.* at *6. Importantly, however, *Chen* involved neither the selection of a church's pastor nor the expulsion of members, and emphasized that review was permissible only because it was confined to the limited issue of selection of directors of the corporation. *See id.* Indeed, the appellate court noted that if the trial court had been asked to adjudicate the issue of "who has the right to minister and to keep the altar," the trial court would have had "no jurisdiction to make such a determination". *Id.* The *Chen* court also noted that church

membership issues were not implicated. *See id.* In contrast, the substance of appellants' claims in this case implicates both pastoral selection and church discipline in the form of expulsion of members.

Appellants' reliance on *Lacy v. Bassett*, 132 S.W.3d 119 (Tex. App.—Houston [14th Dist.] 2004, no pet.), is likewise inapposite. In that case, Lacy made a written request to examine and copy financial records of a church in which he was a member, but his request was denied. *Id* at 121. The church was a non-profit corporation, and thereby subject to the Texas Non-Profit Corporation Act, under which Lacy had the right to "examine and copy [the corporation's] books . . . at the member's expense." *Id.* at 124. The Fourteenth Court held that, because the Act entitled Lacy to review the records and Lacy's suit would not require the trial court "to involve itself with any religious doctrine or principles," the trial court had jurisdiction to adjudicate Lacy's suit for access to the records. *Id.* at 126. Notably, *Lacy* did not involve either church discipline or the selection of a pastor. Appellants' claims in this case, in contrast, would require the trial court to trespass on both.

Appellants also contend that *Anderson v. Truelove*, 446 S.W.3d 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.), supports their argument that the ecclesiastical abstention doctrine does not apply. But *Anderson* merely acknowledged what *Masterson* expressly stated: "the line between required

15

judicial action and forbidden judicial intrusion 'will not always be distinct.'" *Thiagarajan*, 430 S.W.3d at 595 (quoting *Masterson*, 422 S.W.3d at 606). *Anderson* does not stand for the proposition that neutral principles may be applied to resolve disputes that are intertwined with inherently ecclesiastical issues.

In sum, although appellants characterize their claims as purely secular because they rest on provisions of the church's corporate documents, the trial court could not adjudicate this case without interfering in inherently ecclesiastical matters of pastoral selection and church discipline. *See Tran*, 934 S.W.2d at 743 ("[C]ourts must look to the substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata."). Therefore, we hold that the trial court correctly concluded that it lacked subject-matter jurisdiction over the case under the ecclesiastical abstention doctrine. *See Westbrook*, 231 S.W.3d at 400 (where application of neutral principles would impinge upon inherently ecclesiastical issue of church discipline, ecclesiastical abstention doctrine applied); *Dean*, 994 S.W.2d at 395–96 (in suit over pastor's removal, only proper action was for trial court to dismiss for lack of jurisdiction based upon ecclesiastical abstention doctrine). Accordingly, the trial court did not err in granting the plea to the jurisdiction.

We overrule appellants' first and second issues.

## Collateral Estoppel

In their third issue, appellants argue that collateral estoppel barred the trial court from granting appellee's plea to the jurisdiction because the trial court previously had twice denied earlier-filed motions that were premised on similar facts and arguments. In support of this issue, appellants rely on cases applying collateral estoppel to previously-entered final judgments. But here, any previous trial court rulings were merely interlocutory, and cannot support the application of collateral estoppel. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 519 (Tex. 1998) (application of collateral estoppel requires showing of prior final judgment on the merits); *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 569 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (judgment must be final in order to have collateral estoppel effect). Moreover, lack of "[s]ubject matter jurisdiction . . . can be raised at any time." *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012). Thus, we hold that collateral estoppel did not bar the trial court from granting the church's plea to the jurisdiction.

We overrule appellants' third issue.

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Justices Higley, Huddle, and Lloyd.