

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EL PESCADOR CHURCH, INC., | § | |
| | § | |
| | § | No. 08-18-00029-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 384th District Court |
| | § | |
| HECTOR P. FERRERO, ROSA | | of El Paso County, Texas |
| FERRERO, ANTONIO NUNEZ, AND | § | |
| DIEGO SANCHEZ, | | |
| | § | |
| | § | |
| Appellees. | | (TC#2015DCV0484) |
| | § | |

## O P I N I O N

At its core, this is a dispute between factions in a non-denominational church. But specifically, we are asked to review several dispositive motions granted in favor of the pastor, his wife, and two other individuals, all of whom who were alleged to have breached one or more duties to the non-profit corporation that established the church. Based on the record before us, we dismiss in part for want of jurisdiction, reverse and remand in part, and affirm in part.

## FACTUAL BACKGROUND

The relevant facts are all derived from the pleadings and summary judgment record. On March 10, 1995, six persons, who also formed the original board of directors, incorporated El

1

Pescador Church, Inc. (the Church) under the Texas Non-Profit Corporation Act. The initial six board of directors were identified as: Griselda Scalise, Serafin Scalise, Sergio Saenz, Teresa Leyva, Luz Gaham, and Armando Oaxaca. Serafin Scalise served as the pastor at that time. The corporation was to have no members. The board would serve until the adoption of bylaws which would set the number of directors at not less than five persons.

The bylaws, however, are not a part of our record. In fact, the next corporate document in our record appears to be a designation of the registered agent for service filed with the Texas Secretary of State's office some thirteen years later, on December 28, 2007. That filing reflects that the directors, who also served as officers, include: Hector Ferrero (president and director); Rosa Ferrero (secretary and director); and Armando Oaxaca (vice president-treasurer and director) Hector Ferrero apparently began serving as the pastor in 2007 and his wife, Rosa Ferrero, served as an assistant to the pastor.

The next corporate record appears to be the "Minutes of Meeting" dated another seven years later--January 18, 2014. The meeting came about because on January 3, 2014, three individuals who claimed to represent the board of directors, sent a letter through counsel asking Hector Ferrero to help locate a filing cabinet containing corporate records. The three individuals are identified as Carmen Yanez, Arturo Serrano, and Armando Oaxaca. Of the three, only Armando Oaxaca was an original board member.

In response, Hector Ferrero wrote to the three, informing them that they did not constitute the board of directors, that the church congregation in good standing was in process of electing new members to the board, and the request to review corporate records was declined. Hector Ferrero also called a special board meeting before the church congregation on January 18, 2014. The minutes of that special board meeting reflect that there were only three officers and directors

2

at that time:  Hector Ferrero who served president and chief executive officer, Rosa Ferrero who served as corporate secretary, and absent, was Armando Oaxaca, the treasurer.  The minutes also reflect that Antonio Nunez attended as a guest of the board of directors.  He is identified as serving in three roles: (1) accountant, (2) church administration specialist, and (3) notary public.

The minutes further reflect that Hector Ferrero called the special meeting to "expose" a group of people who were the "self proclaim[ed]" board of directors.  Further, the church "hired" Nunez to perform an audit given the lack of corporate documents.  According to Nunez, the only available public information recognized the following officers and directors: Hector Ferrero (president and director); Rosa Ferrero (secretary and director); and Armando Oaxaca (treasurer, vice president, and director)  Nunez then advised the congregation on their duties and responsibilities for electing the board of directors.  He counseled that board members were to be elected by a two-thirds vote of the membership in good standing.

The congregation voted unanimously to elect a committee to represent them and serve a responsive letter on Carmen Yanez, Armando Oaxaca, and Arturo Serrano.  The responsive letter was drafted under Hector Ferrero's signature.   These same three persons were unanimously declared no longer members in good standing of the church, and "are not recognized as Board of Directors and have no authority to represent" the church.  Hector Ferrero was to take over the duties of treasurer, and Armando Oaxaca was to "render the existing [Church] bank account" and financial statements to Hector Ferrero.  Armando Oaxaca was excluded as the treasurer specifically because he was not attending services or tithing.  Finally, the minutes reflect that Hector Ferrero would complete a census of all members who are in good standing based on tithes and church attendance, and following that, those members in good standing would vote on a new permanent board of directors.

3

The letter approved by the congregation, dated January 28, 2014 and under Hector Ferrero's signature, denied that Carmen Yanez, Arturo Serrano, and Armando Oaxaca represented the board. The letter attached the minutes from the special meeting and restated that the members in good standing with the congregation were soon to elect new board members. Armando Oaxaca was requested to appear before the congregation at the next Sunday's services and "surrender the finances" of the Church.

## PROCEDURAL BACKGROUND

Over a year later, attorney Alfonso Soto filed suit on behalf of the Church against Hector Ferrero, Rosa Ferrero, Nunez, and Diego Sanchez.[1] The suit alleges that Hector Ferrero executed a Form 802 filing with the Secretary of State that listed himself as the agent for service. This form also lists only three officers and directors: Hector Ferrero, Rosa Ferrero, and Armando Oaxaca. But the suit alleges Hector Ferrero did not have the authority to execute and file this form. Further, Hector Ferrero, again without authorization, "retained the services" of Nunez to assist the Church with auditing, legal advice, and church management and operations.

The suit claims that based on Nunez's advice, Hector Ferrero and Rosa Ferrero took possession of the Church's corporate records, bank accounts, and that they further expelled as church members the existing board of directors and improperly named a new board. The suit claims that the Church, through its true board of directors, demanded that Hector Ferrero cease and desist from these actions, and when he failed to do so, the Church through its board filed this lawsuit. The suit alleges five causes of action: (1) conversion, (2) breach of fiduciary duty, (3) fraud, (4) the unauthorized practice of public accounting, and (5) the unauthorized practice of law. We add some explanation for each claim.

---

[1] The factual allegations nowhere explain Sanchez's connection to the Church, the board, or the case.

The conversion claim is alleged against Hector Ferrero, Rosa Ferrero, and Sanchez, and is based on the advice of Nunez. It claims that Hector Ferrero with the assistance of Rosa Ferrero and Sanchez (and based on the advice of Nunez) "wrongfully exercised dominion and control" over church property by "changing the bank where funds are deposited, changing the locks to the temple, taking control of the tithe, and subjecting any and all parities [sic] that disagree with these actions to intimidation, ridicule, and humiliation directed from the pulpit to the faithful."

The breach of fiduciary duty claim is alleged only against Hector Ferrero. It claims that as the president and as a member of the board of directors, he owed but breached several duties to the Church, including the duty of care, loyalty, utmost good faith, honesty and candor, full disclosure, and the duty to refrain from self-dealing. He allegedly did so by acting in derogation of the unspecified provisions of law, regulations, and the Church's articles of incorporation.

The fraud allegation is asserted against Hector Ferrero through his own acts or omissions, and the other defendants through their "aid and support[.]" The claim is based on the representation to the congregation that Hector Ferrero was entitled to solely conduct the management and operations of the Church, and as a result, he dispossessed the board of directors of management over the Church.

The last two claims are asserted only against Nunez. One count alleges that he has engaged in the practice of accountancy, despite not being a licensed certified public accountant. As such, he misrepresented his professional abilities to the Church. The count asserts liability under TEX.BUS. & COM.CODE ANN § 17.46(b)(2), (3), and (5).[2] The last count asserts a similar claim

---

[2] Those sections make actionable:
> (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> (3) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;
>  . . .

5

against Nunez, but it is based on providing legal advice while not being a licensed lawyer in the State of Texas.

The suit seeks an accounting of funds received and spent, as well as monetary damages. It does not specifically seek any declaratory relief as to who is or is not a director of the corporation, nor does it seek the return of any property held by any defendant.

All the defendants answered and raised the issue of standing of the three putative board members to authorize the suit and retain an attorney on behalf of the Church. But that issue was never formally presented to the trial court, nor would the record be sufficient for us to decide that matter.[3] Instead, the DTPA claims against Nunez were dismissed pursuant to a plea to the jurisdiction. The remaining conversion and fraud claims against Nunez were dismissed by summary judgment. Defendants Hector Ferrero, Rosa Ferrero, and Sanchez prevailed on their own motion for no evidence motion for summary judgment. The Church challenges those rulings on appeal, but first we take a detour to discuss our own jurisdiction.

---

> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

TEX.BUS. & COM.CODE ANN. § 17.46(b)(2), (3), and (5).

[3] This dispute began with a letter asking for a filing cabinet containing the corporate records. Despite this, the Church apparently never served any requests for production to ask any of the defendants to produce whatever records they might have. And despite this case raising the issue of who constitutes the current board of directors (and thus who might authorize the filing of suit), the bylaws are not in our record, nor any explanation of how the Church got from the original six board member to either the three board members disclosed on the Form 802, or the three board members who supposedly authorized attorney Soto to file suit. TEX.R.CIV.P. 12 would have provided one means to raise that issue. *See Candle Meadow Homeowners Assn. v. Jackson*, No. 05-17-01227-CV, 2018 WL 6187616, at *1 (Tex.App.--Dallas Nov. 27, 2018, no pet. h.)(mem.op. not designated for publication)(review of trial court finding under Rule 12 that board of directors had not authorized attorney to file suit on its behalf).

6

## ECCLESIASTICAL ABSTENSION

We begin by addressing one issue *sua sponte*, which was not raised below or mentioned in the parties' opening briefs.[4]

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment governs conduct of the several states by virtue of the 14th Amendment. *See Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940). Aside from interfering with an individual's observance or practice of a particular faith, government action can burden the free exercise of religion by encroaching on a church's ability to manage its internal affairs. S*ee, e.g., Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952); *Westbrook v. Penley*, 231 S.W.3d 389, 395 (Tex. 2007). Accordingly, the Free Exercise Clause "severely circumscribes the role that civil courts may play in resolving church property disputes[.]" *Presbyterian Church v. Hull Church*, 393 U.S. 440, 449 (1969). Specifically, civil courts cannot inquire into matters concerning "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Serbian E. Orthodox Diocese for U. S. of Am. and Canada v. Milivojevich*, 426 U.S. 696, 713-14 (1976), *quoting Watson v. Jones*, 80 U.S. 679, 733 (1871). We follow this same limitation in Texas under a doctrine referred to as ecclesiastical abstention. *Masterson v. Diocese of N.W. Texas*, 422 S.W.3d 594, 601 (Tex. 2013); *Episcopal Diocese of Ft. Worth v. Episcopal Church*, 422 S.W.3d 646, 650 (Tex. 2013)

The ecclesiastical abstention doctrine is more than just a limitation on a court's actions, it is a limitation on its subject matter jurisdiction. *Masterson*, 422 S.W.3d at 605-06. And we are

---

[4] We asked for post-submission letter briefs by the parties, which each have filed.

"obligated to review *sua sponte* issues affecting jurisdiction." *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004); s*ee also Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012) ("Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte."). This would include the question of ecclesiastical abstention. *Singh v. Sandhar*, 495 S.W.3d 482, 491 n.8 (Tex.App.--Houston [14th Dist.] 2016, no pet.)(trial court could have correctly dismissed claims covered by ecclesiastical matters even if not raised by the parties); *Thiagarajan v. Tadepalli*, 430 S.W.3d 589, 596 n.3 (Tex.App.--Houston [14th Dist.] 2014, pet. denied)("[T]his court is obligated to address the existence of subject matter jurisdiction *sua sponte* regardless of whether the parties challenged it.").

Yet while ecclesiastical abstention prevents us from resolving some disputes, it does not shield all suits simply because a parishioner or church is a party-litigant. Courts also have an obligation to resolve disputes and "cannot delegate their judicial prerogative where jurisdiction exists." *Masterson*, 422 S.W.3d at 606 (courts must "fulfill their constitutional obligation to exercise jurisdiction where it exists, yet refrain from exercising jurisdiction where it does not exist."). Moreover, churches and their congregations "exist and function within the civil community," and therefore they are "amenable to rules governing property rights, torts, and criminal conduct." *Williams v. Gleason*, 26 S.W.3d 54, 59 (Tex.App.--Houston [14th Dist.] 2000, pet. denied); *see also Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 12 (Tex. 2008) ("[R]eligious practices that threaten the public's health, safety, or general welfare cannot be tolerated as protected religious belief.")

For those disputes that we can resolve, Texas courts must apply a "neutral principles methodology" meaning they "apply neutral principles of law to non-ecclesiastical issues involving

8

religious entities in the same manner as they apply those principles to other entities and issues." *Masterson*, 422 S.W.3d at 606; *Episcopal Diocese of Ft. Worth*, 422 S.W.3d at 650 ("But courts applying the neutral principles methodology defer to religious entities' decisions on ecclesiastical and church polity issues such as who may be members of the entities and whether to remove a bishop or pastor, while they decide non-ecclesiastical issues such as property ownership and whether trusts exist based on the same neutral principles of secular law that apply to other entities."). For property ownership disputes, neutral principles "will usually include considering evidence such as deeds to the properties, terms of the local church charter (including articles of incorporation and by laws, if any), and relevant provisions of governing documents of the general church." *Masterson*, 422 S.W.3d at 603.

As our supreme court noted, the "differences between ecclesiastical and non-ecclesiastical issues will not always be distinct, and that many disputes of the type before us will require courts to analyze church documents and organizational structures to some degree." *Id*. at 606; *see also Tran v. Fiorenza*, 934 S.W.2d 740, 743 (Tex.App.--Houston [1st Dist.] 1996, no pet.)("The difficulty comes in determining whether a particular dispute is 'ecclesiastical' or simply a civil law controversy in which church officials happen to be involved."). In so deciding, "courts must look to the substance and effect of a plaintiff's complaint to determine its ecclesiastical implication, not its emblemata." *Tran*, 934 S.W.2d at 743, *citing Green v. United Pentecostal Church Int'l*, 899 S.W.2d 28, 30 (Tex.App.--Austin 1995, writ denied); *see also Mouton v. Christian Faith Missionary Baptist Church*, 498 S.W.3d 143, 149-50 (Tex.App.--Houston [1st Dist.] 2016, no pet.)(sustaining challenge to jurisdiction because appellants' claims were "inextricably intertwined with inherently ecclesiastical issues"); *Williams*, 26 S.W.3d at 59 ("Whether this suit is ecclesiastical, or concerns property rights, torts, or criminal conduct, is determined by first

examining the substance and effect of the [plaintiffs'] petition--without considering what they use as claims--to determine its ecclesiastical implication.").

While the dividing line is not always clear, existing case law gives us some guide posts. First, questions of church membership and the discipline of church members uniformly invoke ecclesiastical abstention. Thus, in *Mouton v. Christian Faith Missionary Baptist Church*, the court declined to hear a suit inextricably intertwined with the selection of the church's pastor and the church's expulsion of members--both issues are "long recognized to be inherently ecclesiastical and of prime importance to the exercise of religious liberty." *Mouton,* 498 S.W.3d at 150. Similarly, in *Singh v. Sandhar,* a trial court erred in involving itself with validation of members eligible to vote in a church election, as well as requiring the election in the first place. One faction in the church had filed suit to set aside an election for a governing council, claiming the election violated the church's bylaws. *Singh*, 495 S.W.3d at 485. The trial court ordered a new election, and then partially entangled itself into a dispute over the list of persons eligible to vote. *Id*. at 485-86. The appellate court, however, concluded that ecclesiastical abstention precluded both the trial court's role in policing the voter list, as well as the initial decision to order a new election. *Id*. at 490-91, 493. Absent a question of property rights, the internal governance dispute was beyond the scope of trial court's jurisdiction. *Id*.

Along similar lines, the exclusion of persons from entering church property may raise an ecclesiastical matter. In *Retta v. Mekonen*, a trial court entered an injunction prohibiting a church from excluding from worship services any person who was peaceably participating in the service. 338 S.W.3d 72, 75 (Tex.App.--Dallas 2011, no pet.). The issue arose because the church, in apparent contravention of its own bylaws, had required monthly membership dues that several parishioners failed to pay. *Id*. at 74. The appellate court concluded, however, that a church has a

right to control its membership without government interference, which includes the authority to determine who could be excluded from the property. *Id*. at 76. Moreover, the church's failure to follow its own bylaws on a matter of internal governance was also a matter of ecclesiastical concern, which courts are likewise prohibited from interfering with. *Id.* at 77.[5]

Another line of cases has applied ecclesiastical abstention to defamation suits stemming from pastoral statements. The court in *In re Godwin* confronted a defamation suit based on the pastor publicly "marking" a former member of the church by accusing him of bribery and slander. 293 S.W.3d 742, 749 (Tex.App.--San Antonio 2009, orig. proceeding). "Marking" is a concept that the church claimed was founded in the scriptures.[6] *Id.* at 748. While acknowledging that there could be some outer limit to abstention in the defamation context, the court nonetheless concluded that defamation and intentional infliction of emotional distress claims based on the marking were beyond the jurisdiction of the courts. *Id.* at 749; s*ee also Westbrook v. Penley*, 231 S.W.3d 389, 391 (Tex. 2007)(court lacked jurisdiction to hear claims arising from pastor encouraging congregation to "shun" former parishioner for "biblically inappropriate" relationship); *Thiagarajan,* 430 S.W.3d at 594-95 (declining to hear defamation suit between church members over emails about church policy); *In re Alief Vietnamese All. Church*, 576 S.W.3d 421, 425-426 (Tex.App.--Houston [1st Dist.] 2019, no pet.)(court lacked jurisdiction over suit based on pastor's rebuke of church member before congregation when rebuke was grounded in church bylaws outlining how disputes were to be handled).

---

[5] The court did hear a portion of the injunction that prohibited the church from destroying church documents or records. It concluded, however, that the movants had not made a sufficient showing to support the temporary injunction on that issue. *Retta*, 338 S.W.3d at 78.

[6] Romans 17-20 (King James version).

11

*In re Godwin* raised another issue. The former church member alleged that the church had misused church funds, which formed the basis of a fraud allegation. 293 S.W.3d at 749-50. Some of the disputed financial expenditures, however, were approved by a committee based on the church's doctrine. *Id*. Necessarily, the determination of whether the financial expenditures were proper would have required an inquiry into whether the expenditures were justified by the church's religious doctrine and practices. *Id*. Accordingly, the court lacked any jurisdiction to hear the fraud claim upon which the challenged expenditures was based. *Id.*

One area where courts have not uniformly abstained, however, are property ownership disputes. That issue reached the Texas appellate courts following a schism in the Episcopal faith over a doctrinal dispute.[7] The Texas Supreme Court heard one such suit in *Masterson*. Some members of a local parish sought to leave the national organization ("The Episcopal Church") and the regional diocese that oversaw the parish. 422 S.W.3d at 597-98. The parishioners did so by voting to amend the bylaws of the Texas non-profit corporation that established the parish. *Id.* The diocese refused to honor the amendments, and it appointed a new priest-in-charge and recognized a group of loyal parishioners who elected a new vestry (a parish's governing council). *Id*. A lawsuit followed, seeking in part declarations as to who controlled the parish property, and which faction represented the true parish. *Id.* at 598. On cross-motions for summary judgment, the trial court and intermediate court of appeals sided with the diocese and national church. *Id*. at 599-600.

The Texas Supreme Court reversed and remanded. The court agreed that the trial court lacked jurisdiction over whether the diocese's bishop was authorized to form a new parish, recognize its membership as the "true" parish, and whether he could or did authorize that parish to

---

[7] See *The Episcopal Church v. Salazar*, 547 S.W.3d 353, 370-72 (Tex.App.--Fort Worth 2018, pet. granted)(outlining origin and history of one long-running lawsuit).

establish a vestry. *Id*. at 608. These were ecclesiastical matters of church governance over which the trial court properly deferred to the bishop's exercise of ecclesiastical authority. *Id.* But those decisions did not necessarily determine the property ownership issue, nor did they govern the secular legal question of the validity of the parish members' vote to amend the bylaws and articles of incorporation. *Id.* at 610. The court held that the corporation, with its secular existence derived from state law and its articles of incorporation and bylaws, is subject to a neutral principles' determination. *Id.* As such, whether the corporation's bylaws were complied with when a vote was taken to disassociate the corporation from the hierarchical church was reviewable. *Id*.

### *Application*

Based on these landmarks, we conclude that the trial court lacked the subject matter jurisdiction to hear the claims against Hector Ferrero, Rosa Ferrero, and Sanchez. Of the three theories asserted in the petition, the conversion allegation comes closest to the *Masterson* line of cases. Yet that claim does not involve any issue of title to property. Nor does it seek any declaration of who has access to, or control over the Church's personal property or accounts. For that matter, it does not seek any sort of declaration as to who the officers or directors of the Church are. Rather, it only seeks monetary damages for the defendants' respective roles in the conversion of personal property, the tithe, and the bank account. To develop the case for those monetary damages, however, the Church would necessarily embroil the courts into membership, church discipline, and church governance matters. That is to say, the claim for monetary damages would require more than a neutral principles analysis of the articles of incorporation. The spark for monetary relief will touch several ecclesiastical matters. We reach that conclusion both from the pleaded allegations and the evidence that the Church offered in response to the motions for summary judgment.

13

The Church's pleaded allegation under the conversion count claims that the defendants wrongfully exercised control over Church property "by changing the bank where funds are deposited, changing the locks to the temple, taking control of the tithe, and subjecting any and all parities [sic] that disagree with these actions to intimidation, ridicule, and humiliation directed from the pulpit to the faithful." These claims largely fall within areas previously held as triggering ecclesiastical abstention. *See Retta*, 338 S.W.3d at 75 (access to church property); *In re Godwin,* 293 S.W.3d at 749 (statements made from pulpit and use of church monies); *Hawkins v. Friendship Missionary Baptist Church*, 69 S.W.3d 756, 759 (Tex.App.--Houston [14th Dist.] 2002, no pet.)(in absence of controlling governing document, a power struggle between the Church, its deacons, and the pastor could not be resolved only on neutral principles of law, but would require reference to religious doctrine or polity).

Additionally, the evidence that the Church used to respond to the motion for summary judgment shows how its case is inextricably intertwined with ecclesiastical issues. That evidence consists of two affidavits that in themselves do not state any substantive facts germane to the conversion claim. Rather, the affidavits attempt to prove up other documents, such as the original articles of incorporation, demand letters and responses to the demand letters, and most importantly, the meeting minutes from the January 18, 2014 church meeting. The meeting minutes state that "the congregation requested to place in discipline the Treasurer--Armando Oaxaca and for him to be destitute of the position of Treasurer." The minutes conclude that "Oaxaca can't function as Treasurer since he is not attending services or tithing to the congregation." Discipline of church members, particularly based on a scriptural concept such as tithing, are uniquely ecclesiastical. *See Mouton*, 498 S.W.3d at 150 (declining to hear discipline and membership issues); *Hawthorne v. Couch*, 911 So.2d 907, 910 (La. App. 2d Cir. 2005)("The issue of tithing is at its core a purely

ecclesiastical matter."); *Glass v. First United Pentecostal Church of DeRidder*, 676 So.2d 724, 735 (La. App. 3d Cir. 1996)("Furthermore, tithing is at the root of ecclesiastical doctrine. If these complaints are in any way related to discipline on such, they would fall outside of the Court's jurisdiction."). Additionally, the minutes state that the "bank account is the property of [the Church] and no money shall be used unless it is approved by two thirds vote of the congregation of [the Church]." The Church's summary judgment proofs showed that while the bank account was moved, any expenditures were approved by a two-thirds vote of the congregation. At best, this raises an internal governance issue for which the courts should abstain. *See In re Godwin*, 293 S.W.3d at 749-50 (declining to hear fraud claim over disputed use of church funds); *Hawkins*, 69 S.W.3d at 759 (declining to hear dispute that in part involved deacons attempt to interfere with pastor's expenditure of funds).

The other claims--fraud and breach of fiduciary duty, equally implicate facts that are inextricably intertwined with internal church governance, the role of the pastor in church affairs, membership in the congregation, and statements of the pastor from the pulpit. The breach of fiduciary allegations itself claims Hector Ferrero "has misused the pulpit to gain the control of the purse and the power over the congregation for his sole benefit." The fraud allegation also refers to representations made to the congregation and misleading the congregation about internal church governance. We likewise conclude the trial court also lacked the jurisdiction to hear those claims under ecclesiastical abstention.[8]

---

[8] And even if we err in reaching this conclusion, we would have certainly been required to affirm the judgment below as to Rosa Ferrero and Sanchez. They filed a no evidence motion for summary judgment, but none of the proofs that the Church filed in opposition to that motion raise any fact issue as to them. None of the proofs even mention Sanchez. And the proofs also only show that Rosa Ferrero is listed on some filings as a corporate officer and director. They fail to document any action that she took in that, or any other capacity. Based on that record, we would be compelled to affirm their dismissal below.

15

**THE CLAIMS AGAINST NUNEZ**

The Church also sued Nunez for advice that he gave to Hector Ferrero and the congregation. He is alleged to have provided accounting and legal advice while not being licensed in those occupations. There is no allegation or evidence that his advice was ecclesiastical in nature, but rather the pleading alleges it is related to corporate governance under the corporation's articles of incorporation and Texas law. We view those claims differently from the allegations against the church officers and congregants.

### Nunez Plea to the Jurisdiction and Special Exceptions

Nunez filed a plea to the jurisdiction levelled at the DTPA claims asserted against him. The text of the motion claims that the Church is not a "consumer" and thus has no standing to assert the two DTPA claims. It specifically claims that "[n]owhere, in its Original Petition does [the Church] allege that it sought out [Nunez's] services. Nor does [the Church] allege that it was privy to, or the beneficiary of any alleged transaction wherein [Nunez's] services were solicited and paid for." Nunez orally supplemented his motion at the hearing by invoking the DTPA's exemption for professional services. TEX.BUS. & COM.CODE ANN § 17.49. Because Nunez was faulted for providing accounting and legal services, which are necessarily professional services, he contended that the exemption would also bar the claim.

At the hearing, the Church responded by referring the trial court to the January 18, 2014 meeting minutes that reflect that Nunez had been hired to provide auditing and other services. The Church further argued that Nunez's repeated representation of being a "Notary Public" mislead the congregation into believing he was a "*notaria publica*" as that term might be understood in Mexico. The Church also asked that it be allowed to replead if its claim was unclear. Nonetheless, the trial court granted the plea to the jurisdiction and dismissed the two claims for unauthorized

16

practice of accountancy and law.   In the Church's first issue, it contends the trial court erred in making that ruling.

### *Standard of Review and Controlling Law*

A court must possess subject matter jurisdiction to decide a case, and standing is implicit in the concept of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).  Whether a party has standing to maintain a suit is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).  A plaintiff carries the burden to allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.  In reviewing a standing ruling, an appellate court construes the petition in favor of the pleader. *Id.*  We are mindful that the pleader need not preview their case on the merits simply to establish jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000).

Standing to sue may be predicated upon either statutory or common law grounds. *See, e.g., Williams v. Lara*, 52 S.W.3d 171, 178-79 (Tex. 2001).  When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *Schecter v. Wildwood Developers*, *L.L.C.*, 214 S.W.3d 117, 121 (Tex.App.--El Paso 2006, no pet.).  The DTPA prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce. *See* Tex.Bus. & Com.Code Ann. § 17.46(b)(5), (7), (13), (22), (24).  To recover under the DTPA, the plaintiff must show that (1) it is a consumer, (2) the defendant engaged in a false, misleading, or deceptive act, and (3) the act constituted a producing cause of compensable damages. *See id.* at § 17.50(a)(1); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).  Here, we deal only with a claim that the Church lacks the statutorily required element of being a "consumer" under the DTPA.

17

A consumer is one who "seeks or acquires by purchase or lease, any goods or services." TEX.BUS. & COM.CODE ANN. § 17.45(4); *Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex. 1985). A consumer need not be the actual purchaser or lessor of goods or services; a beneficiary of goods or services may be a consumer for purposes of the DTPA. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 815 (Tex. 1997)(acquiring company had consumer status as to accounting services rendered to company being acquired and which were contemplated by the acquisition); *Kennedy*, 689 S.W.2d at 893 (employee had consumer status for group health insurance policy purchased by his employer). Nor is strict privity required:

> Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA.... A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint.

*Flenniken v. Longview Bank & Trust Co*., 661 S.W.2d 705, 707 (Tex. 1983). Consumer status may be extended to third parties in those limited situations when the transaction was specifically required by or intended to benefit the third party and the goods or services were rendered to benefit the third party. *Arthur Andersen*, 945 S.W.2d at 815. "The relevant inquiries to be made in determining consumer status are (1) to whom the representations were made; (2) who suffered damages from the representations; and (3) who was affected by the defendant's alleged misconduct." *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex.App.--San Antonio 2002, pet. denied).

A plaintiff's lack of standing may be challenged through several procedural devices. *Bland*, 34 S.W.3d at 554; *see also Sneed v. Webre*, 465 S.W.3d 169, 176 (Tex. 2015)(lack of standing to assert statutory claim raised through special exceptions, plea to the jurisdiction, plea in abatement, motion for summary judgment, and motion to dismiss). Here, Nunez challenged consumer status through a plea to the jurisdiction.

18

When a plea to the jurisdiction challenges the pleadings, we look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleadings as true to determine if the pleader has alleged sufficient facts to affirmatively demonstrate the trial court's jurisdiction to hear the case. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012); *JNC Land Co., Inc. v. City of El Paso*, 479 S.W.3d 903, 907 (Tex.App.--El Paso 2015, pet. denied). "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend their pleading. *Id.* at 227.[9]

### *Application*

We conclude the trial court erred in granting the plea for two reasons. First, taking the Church's allegation as true, it alleged consumer status, or at least it could have amended the petition to state a claim. Second, if the trial court based its decision on the professional services exemption that Nunez advanced at the hearing, the Church should have also been given an opportunity to replead its case. That is, nothing about its allegations show that they could not have amended to properly allege a DTPA claim.

The Church's Original Petition alleges that Hector Ferrero, without the Church's knowledge or authorization, "retained the services" of Nunez who represented himself to be a notary public, accountant, and advisor to churches. Nunez supposedly "offered" his services to

---

[9] A plea might also challenge the existence of jurisdictional facts, but to do so, Nunez would have had to offer his own evidence denying a relevant jurisdictional fact. *Miranda*, 133 S.W.3d at 226. His plea, however, only challenged the adequacy of the pleadings.

19

perform an internal audit and "legal advice regarding church management and operations." Based on that advice, Hector Ferrero allegedly took the actions that he did. The allegations, construed liberally in the pleaders favor as we must, assert that Hector Ferrero hired Nunez to provide services. The only missing link is whether the Church retained his services and is the consumer, as distinct from Hector Ferrero. Nunez seizes on the "without knowledge or authorization from the Church" to distance the Church from the transaction. But the pleading also attaches a form that Hector Ferrero filed with the Secretary of State that designates him as the president of the organization. He was also the pastor. He was at least an apparent agent who could have hired Nunez on behalf of the Church. Accordingly, if the defect in the pleading is linking Nunez's employment to the Church (as distinct from Hector Ferrero, individually), we think the Church deserved the opportunity to replead.

The same can be said for Nunez's arguments on the professional services exemption. The DTPA provides that: "[n]othing in this subchapter shall apply to a claim for damages based on the rendering of a professional service, the essence of which is the providing of advice, judgment, opinion, or similar professional skill." TEX.BUS. & COM.CODE ANN. § 17.49. But this exemption has a least one exception that might have been invoked here:

> (2) a failure to disclose information in violation of Section 17.46(b)(24) [which in turn makes actionable: 'failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed'].

TEX.BUS. & COM.CODE ANN. § 17.49.

The essence of the Church's claim against Nunez is not only that the advice that he gave was wrong, but that he was not licensed or qualified to provide it. The original articles of incorporation provide that this non-profit corporation had no members. The meeting minutes state that Nunez told the congregation that they could elect a new board of directors on a two-thirds vote

20

of the eligible *members* of the congregation. But the question of who might elect a new board could well be controlled by the Texas Business Organizations Code. *See e.g.* TEX.BUS.ORGS.CODE ANN. § 22.151(a)(allowing for corporations with no members); *Id*. at § 22.107 (for such entities, an amendment to the corporation's certificate of formation for any fundamental actions requires a vote *by the board of directors*); *Id*. at § 22.164(b)(3)(setting vote at majority of directors in office); *Id*. at § 22.206 (in the absence of bylaws or the certificate of formation to the contrary, "directors other than the initial directors are elected by the board of directors.").

On the record before us, the Church might have alleged Nunez's advice was incorrect, and more importantly, had he disclosed limitations in his inability to give legal advice, the congregation might not have been so inclined to act on his advice. It might have pleaded for damages that are independent of the issues that invoke ecclesiastical abstention (such as any amount Nunez may have billed the Church). We emphasize, however, that we are limited by the exceedingly thin record before us. Had the record contained the bylaws, additional information about Nunez's qualifications, or his arrangement with the Church, these allegations might well become untenable. But our task here is only to determine if there is no possible basis for the Church to replead, and based on this record, we cannot say that it should be denied that opportunity. We sustain the Church's first issue.

### Nunez No Evidence Motion for Summary Judgment-Fraud

Nunez filed a no evidence motion for summary judgment as to the common law fraud claim asserted against him. As we understand the motion, Nunez claims that: (1) the Church cannot produce any evidence that any material misrepresentation was made to the Church, as distinct from

Hector Ferrero; and (2) the Church never relied on any representation that was made. The Church's second issue challenges the summary judgment based on those arguments.

### *Standard of Review and Controlling Law*

We review a trial court's decision to grant summary judgment *de novo. Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A "no evidence" motion requires the moving party to "state the elements as to which there is no evidence," and upon doing so, the burden shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged in the motion. TEX.R.CIV.P. 166a(i); *see also Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc.*, 417 S.W.3d 531, 540 (Tex.App.--El Paso 2013, no pet.).

We review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002). The non-movant establishes a genuine issue of material fact by producing more than a scintilla of evidence regarding the challenged element. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Id.* The non-movant fails in their burden when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. *Wade Oil & Gas*, 417 S.W.3d at 540; *Matter of Estate of Zerboni*, 556 S.W.3d 482, 485–86 (Tex.App.--El Paso 2018, no pet.).

For a fraudulent misrepresentation claim, the Church was obligated to plead and prove that: (1) a material representation was made; (2) that was false; (3) that was made knowingly or with reckless disregard for its truth or falsity; (4) that was made with the intention that it be acted upon

22

by the other party; (5) it was in fact relied upon by the other party; and (6) damaged the other party. *Chico Auto Parts & Serv., Inc. v. Crockett*, 512 S.W.3d 560, 575-76 (Tex.App.--El Paso 2017, pet. denied); *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 337 (Tex. 2011)(identifying the six elements of fraud).

### *Application*

Based on the no evidence motion, the only elements that Nunez challenged were that (1) he made a misrepresentation to the Church that (2) the Church relied on. The essence of his argument is that the representations were made to Hector Ferrero, who as a defendant himself, did not rely on a representation that he already knew to be false.

The Church's response includes two affidavits--one from Armando Oaxaca and one from Carmen Yanez. The affidavits themselves do not set forth any facts germane to the conduct of the parties or the claims made. Instead, Armando Oaxaca only states that he served in various capacities in the Church, including as a board member and treasurer, and he then authenticates three attached documents: (1) the original articles of incorporation from 1994, (2) a Spanish language document, and (3) a bank statement for the month of January 2014.

The affidavit of Carmen Yanez also swore that she was involved with the Church in various capacities, including as a member of the board of directors for several years, and as its president since her appointment on February 8, 2014. But substantively, all that affidavit does is attach several records as authentic copies of records that attorney Soto has in his file. These records include:

> (1) a letter dated January 3, 2013 from Carmen Yanez, Armando Oaxaca, and Arturo Serrano to Hector Ferrero asking for the whereabouts of a filing cabinet with the Church's corporate records.
>
> (2) a January 16, 2014 letter from Hector Ferrero to Carmen Yanez, Armando Oaxaca, and Arturo Serrano informing them that they did not constitute the board, that a new election would soon be held, and declining to let them see the records.

23

(3) a signed letter by Hector Ferrero to attorney Soto on January 28, 2014, attaching: (a) a January 28, 2014 print out from the Texas Secretary of State's Office (and showing only Hector Ferrero, Rosa Ferrero, and Armando Oaxaca as officers and directors); (b) a franchise Tax Account Status showing Hector Ferrero as the agent of service; and (c) the January 18, 2014 meeting minutes.

Nunez urges on appeal that the Church's response in part relies on allegations made in pleadings, and indeed, pleadings are not evidence. *Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971). Accordingly, we look only to the evidence attached to the Church's response and not its petition.

Some of the defendant/appellees also urged below that many of the documents attached to the Church's response are replete with hearsay to which there is no exception. And while several evidentiary objections might apply to the attachments, the trial court never ruled on any specific objection below. Summary judgment proceedings use the rules of error preservation applicable during trial. TEX.R.APP.P. 33.1(a); *Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 317-18 (Tex. 2012)(per curiam). To preserve a complaint for appellate review: (1) a party must complain to the trial court by way of a timely request, objection, or motion; and (2) the trial court must rule or refuse to rule on the request, objection, or motion. TEX.R.APP.P. 33.1(a); *Mansions in the Forest, L.P.*, 365 S.W.3d at 317. Thus, in a summary judgment proceeding, a party asserting evidentiary objections should obtain a written ruling at, before, or very near the time the trial court rules on the motion for summary judgment or risk waiver. *See* TEX.R.APP.P. 33.1(a); *Dolcefino v. Randolph*, 19 S.W.3d 906, 926 (Tex.App.--Houston [14th Dist.] 2000, pet. denied). Because there was no ruling on any objection to the evidence below, we are constrained to accept the attached exhibits at face value. *See also* TEX.R.EVID. 802 ("Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay.").[10]

---

[10] One exception, however, is the multi-page document that is entirely in Spanish. The Rules of Evidence provide a procedure for admitting documents in another language. *See* TEX.R.EVID. 1009 (setting out procedure for admitting

24

Taking the exhibits at face value raises at least a scintilla of evidence that Nunez made certain representations to the Church. First, the various exhibits show that at the time of the January 18, 2014 meeting, Hector Ferrero and his wife, Rosa Ferrero, were both officers of the Church, as well as directors. A communication to them would be a communication to the Church. At the meeting, Nunez made essentially four representations: (1) certain documents filed with the State of Texas reflect only three officers, who were also directors (Hector Ferrero, Rosa Ferrero, and Armando Oaxaca); (2) certain documents filed with the State of Texas show that Hector Ferrero is the registered agent of service; (3) as per the articles of incorporation, only members in good standing with the Church are eligible to vote for new officers and directors; and (4) that a two-thirds majority of eligible members can vote in a new board. Setting aside the issue of whether any of these representations were false, or that Nunez knew them to be false (as those elements are not raised in the summary judgment), they were at least communicated to two members identified as board members of the Church on January 18, 2014.

The Church also raised some evidence of reliance on the statements. The January 18, 2014 meeting minutes recite that Nunez was hired on January 12, 2014 to start an internal audit of the Church "since there were no official documents available" for the corporation. On January 16, 2014, Hector Ferrero authored a letter to Carmen Yanez, Armando Oaxaca, and Arturo Serrano that recited each of the four representations that Nunez is being sued over. The same claimed representations were repeated at the January 18, 2014 meeting, and the congregation voted at that meeting to authorize a further response letter and ouster of Carmen Yanez, Armando Oaxaca, and

translation of document in a foreign language). This Court does not act as a translator for litigants. *See Texas Tech Univ. Health Science Ctr. v. Lozano*, 570 S.W.3d 740, 747 (Tex.App.--El Paso 2018, pet. denied); *Lacoma v. Canto,* 236 S.W. 1013, 1014 (Tex.App.--El Paso 1922, no writ). This is a longstanding rule that should be of no surprise to litigants. *See Sartor v. Bolinger,* 59 Tex. 411, 413 (1883).

Arturo Serrano. Based on these documents, there is at least a scintilla of evidence of reliance. We sustain issue two as it relates to the fraud allegation against Nunez.

**Nunez Affirmative Motion for Summary Judgment-Conversion**

As to the conversion allegation, Nunez filed an affirmative motion for summary judgment under TEX.R.CIV.P. 166a(b). Part of the Church's second issue challenges the trial court's order granting that motion.

*Standard of Review and Controlling Law*

A traditional summary judgment is proper when the movant establishes that no genuine issues of material fact exist, and that the movant is entitled to judgment as a matter of law. *BCCA Appeal Group, Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016). To be entitled to summary judgment, a defendant must conclusively negate at least one essential element of the plaintiff's cause of action or establish all elements of an affirmative defense as a matter of law. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

Once the defendant produces evidence sufficient to establish the right to summary judgment, the burden then shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue as to each challenged element of the plaintiff's claim or one element of the defendant's affirmative defense. *Amedisys, Inc. v. Kingwood Home Health Care*, *LLC*, 437 S.W.3d 507, 511 (Tex. 2014). If the movant does not satisfy its initial burden, however, the burden does not shift, and the non-movant need not respond or present any evidence. *Id.* at 511-12; *see also McConnell v. Southside Indep. Sch. Dist*., 858 S.W.2d 337, 343 (Tex. 1993)("the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right" to judgment).

26

*Application*

Despite the standards for traditional motions for summary judgment, Nunez presented no evidence in support his traditional motion for summary judgment. Instead, the motion is premised solely on the Church's pleadings. The motion argues that the conversion claim must fail because "the property converted was not personal property[.]" It also asserts that the petition does not allege that Nunez "exercised dominion over its property." Rather, at most Hector Ferrero relied on the advice of Nunez to wrongfully exercise dominion and control over Church property.

We are mindful of the general rule that a "summary judgment should not be based on a pleading deficiency that could be cured by amendment." *In Interest of B.I.V.*, 870 S.W.2d 12, 13-14 (Tex. 1994); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)(holding that whether pleadings fail to state a cause of action may not be resolved by summary judgment). Instead, a trial court should grant summary judgment dismissing a plaintiff's claims based on a pleading deficiency, only after giving the plaintiff the opportunity to amend the pleadings as with a special exception. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998).

Nonetheless, a nonmovant waives that complaint if the nonmovant fails to raise the complaint in the trial court. *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 210 (Tex. 1990)(where plaintiff argued for the first time on appeal that the defendant should have challenged his pleadings through a special exception, which would have given him the opportunity to amend his pleadings in order to state an actionable claim against the defendant, appellate court erred by reversing the trial court's decision on that basis); *Warwick Towers Council of Co-Owners v. Park Warwick, L.P.*, 298 S.W.3d 436, 444 (Tex.App.--Houston [14th Dist.] 2009, no pet.)("A nonmovant waives a complaint that summary judgment improperly was granted on the pleadings by failing to raise it."); *see also* TEX.R.CIV.P. 166a(c) ("Issues not expressly presented to the trial

27

court by written motion, answer or other response shall not be considered on appeal as grounds for reversal" in a summary judgment proceeding). In this case, the Church failed to raise any such complaint in the trial court, and never asked for the right to amend its pleadings to state a valid conversion claim against Nunez. Accordingly, we conclude that any complaint that the trial court improperly granted summary judgment on the pleadings without an opportunity to amend has been waived. *See Chico*, 512 S.W.3d at 575.

Turning to the substance of the argument based on the pleadings, we would reject Nunez's first argument that "the property converted was not personal property[.]" The Church's pleading is broad enough to encompass exclusion from the premises, which would necessarily include its furnishings. We agree, however, with Nunez's second argument that the Church's pleading does not claim that he exercised dominion over any Church property. Conversion is the unauthorized and unlawful exercise of dominion and control over another's personal property which is to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex. 1971); *Almance v. Shipley Bros., Inc.*, 247 S.W.3d 252, 254 (Tex.App.--El Paso 2007, no pet.). The Church's pleading does not claim that Nunez did this. Rather, it affirmatively states that Hector Ferrero did.

At most, the Church falls back on its claim that Hector Ferrero relied on Nunez's advice. But that by itself is not enough to hold Nunez liable for the conversion claim. When a person is not the one who actually takes control over the property, the plaintiff would need to assert some ancillary theory to tie them to the tort. Theories more typically employed for that purpose include conspiracy, joint enterprise, or possibly aiding and abetting. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)(setting out elements of conspiracy); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 534– 35 (Tex. 2002)(setting out elements of joint venture); *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex.

28

1996)(aiding and abetting).[11] Yet each of those theories have specific elements that are lacking here. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996)(actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement); *Wolff*, 94 S.W.3d at 534 (joint enterprise includes element of express or implied agreement to share profits and mutual right of control); *Juhl*, 936 S.W.2d at 644 (aiding and abetting would require the actor, with unlawful intent, to give substantial assistance and encouragement to a wrongdoer in a tortious act). In sum, the Church neither pleaded, nor presented evidence that Nunez himself exercised any dominion or control over Church property. We overrule Issue Two as to the conversion claim asserted against Nunez.

## CONCLUSION

We sustain the Church's first issue as to Nunez and remand the DTPA claims. We sustain the second issue in part and reverse the summary judgment only as to the fraud claim asserted against Nunez. We overrule the second issue in part and affirm the trial court's order as it pertains to the conversion claim against Nunez. We dismiss all the claims against Hector Ferrero, Rosa Ferrero, and Sanchez for want of jurisdiction. We accordingly overrule the Church's issues three, and four as moot.

November 25, 2019                                    ANN CRAWFORD McCLURE, Senior Judge

Before Rodriguez, J., Palafox J., and McClure, Senior Judge
McClure, Senior Judge (Sitting by Assignment)

---

[11] The Texas Supreme Court, however, has recently cautioned that it has never expressly recognized a distinct aiding and abetting claim. Instead, it has only resolved arguments that assumed such a claim's existence. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 225 (Tex. 2017).